UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LYNDON VETERINARY CLINIC, PLLC, on behalf of itself and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>STERICYCLE, INC.,<br><br>　　　　　　　Defendant. | Case No. 1:13-cv-2499<br><br>Judge Milton I. Shadur |

**MEMORANDUM OF LAW IN SUPPORT OF**
**STERICYCLE, INC.'S MOTION TO DISMISS**

　　　　Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Stericycle, Inc. ("Stericycle" or "Defendant"), by and through undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss three of the four causes of action brought by Plaintiff Lyndon Veterinary Clinic, PLLC ("Plaintiff").

**INTRODUCTION AND BACKGROUND**

　　　　This case presents a garden variety breach of contract scenario. Nonetheless, Plaintiff improperly seeks to expand this breach of contract claim into a multiple-count action based on fraud. This is not allowed under Illinois law given the allegations and claims at issue.

　　　　Plaintiff filed its Complaint against Stericycle on April 3, 2013, in the Northern District of Illinois, Eastern Division. The Complaint purports to be a nationwide class action on behalf of all "persons and entities that, pursuant to a contract with Stericycle, Inc., paid a flat fee for medical waste disposal services and whose fee was increased pursuant to Stericycle's automated price increase policy, excluding governmental entities whose claims are asserted in *United States*

*ex rel. Perez v. Stericycle, Inc.*" (Compl. ¶ 72.)

Plaintiff alleges that it is a citizen of New York, and that it and Stericycle entered into a "Steri-Safe Service Agreement" ("Agreement") on May 21, 2009. (Compl. ¶ 9.) Importantly, Plaintiff also alleges that the Agreement contains section 2(b), which provides as follows: "Stericycle reserves the right to adjust the contract price to account for operational changes it implements to comply with documented changes in law, to cover increases in the cost of fuel, insurance, or residue disposal, or to otherwise address cost escalation." (Compl. ¶ 26.) Plaintiff alleges that thereafter, Stericycle charged fees and costs that were not related to cost increases and therefore not authorized by the Agreement entered into by the parties. (*Id.* ¶ 88.) Plaintiff alleges that when it called Stericycle to complain, Stericycle stated that it would negotiate the cost and give it credit towards its bill. (*Id.* ¶ 62.)

Thus, the sum and substance of Plaintiff's Complaint is that Stericycle breached the Agreement, specifically section 2(b), by automatically increasing prices and/or adding unauthorized fees and surcharges to customers' invoices, where the increases and/or fees bore no relation to operational cost increases to Stericycle, as allegedly required by section 2(b). The Complaint brings four causes of action based on these same factual allegations: (1) breach of contract and breach of the covenant of good faith and fair dealing; (2) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act; (3) unjust enrichment; and (4) common-law fraud. All counts other than the breach of contract claim should be dismissed.

Plaintiff's ICFA claim is deficient for three separate and independent reasons, any one of which constitutes grounds for dismissal. First, it fails to state a claim as a matter of law because it is nothing more than a reiteration of the breach of contract claim. It is well established that the ICFA does not apply to a claim for breach of a contractual promise—without more. Yet nothing

more is alleged in Plaintiff's Complaint. Second, Plaintiff has failed to allege sufficiently all of the elements of an ICFA claim. Third, Plaintiff is not an Illinois resident. As a consequence, it cannot maintain a claim under the ICFA absent allegations of a "substantial" connection to Illinois. Again, Plaintiff makes no such allegations.

Plaintiff's unjust enrichment claim must be dismissed because Plaintiff has alleged the existence of an express written contract between the parties. Unjust enrichment requires the absence of a contract.

Finally, Plaintiff's common-law fraud claim must also be dismissed because it does not assert any allegations that would convert this simple breach of contract action into a fraud claim or satisfy Rule 9(b). Further, if Plaintiff is relying on a concealment theory to establish a fraud claim, such claim still fails because the parties were in an arm's-length business relationship that demonstrates no duty on the part of Stericycle to disclose. Dismissal of this claim is appropriate.

## MOTION TO DISMISS STANDARD

A complaint must "give the defendants fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2008) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A plaintiff can plead himself out of court by pleading facts that show that he has no legal claim. *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). Plaintiffs cannot rely on "mere labels, conclusions, or a formulaic recitation of the elements of a cause of action." *DeGuelle v. Camilli*, 664 F.3d 192, 198 (7th Cir. 2011). A complaint alleging a violation of the ICFA requires the same specificity as that required under common law fraud

and must satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure. *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011).

## ARGUMENT

I.  **PLAINTIFF'S ICFA CLAIM SHOULD BE DISMISSED.**

    A.    <u>The ICFA Does Not Apply to a Claim for Breach of Contractual Promise Absent Additional Allegations Amounting to Fraud.</u>

Under Illinois law,[1] a breach of a contractual promise, without more, is not actionable under the ICFA. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E. 2d 801, 844 (Ill. 2005). "Consumer fraud or deception must be something more than simply a failure to fulfill contractual obligations—for that type of 'misrepresentation' occurs every time a defendant breaches a contract." *Id.* (citing *Zankle v. Queen Anne Landscaping*, 724 N.E.2d 988, 993 (Ill. App. Ct. 2000)).

As a matter of law, a plaintiff's ICFA claim must be based on allegations distinct from the defendant's promises under the contract. *Id.* "This principle has been applied by Illinois courts in myriad circumstances." *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 901-02 (7th Cir. 2006). In general, courts have allowed consumer fraud act claims that intersect with underlying contract claims where a plaintiff alleges that a defendant's misrepresentation about characteristics of the product itself induced the plaintiff to enter the contract. *See M. W. Widoff, P.C. v. Encompass Ins. Co.*, No. 10 C 8159, 2012 WL 769727 at *3 (N.D. Ill. March 2, 2012) (citing *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 594-95 (Ill. 1997); *Pappas v. Pella Corp.*, 844 N.E.2d 995, 998-99 (Ill. App. Ct. 2006); *Perona v. Volkswagen of Am. Inc.*, 684 N.E.2d 859, 866 (Ill. App. Ct. 1997)). The *Widoff* court noted that in *Connick*, *Pappas*, and *Perona*, the plaintiffs "allege[d] misrepresentations about the products themselves and not about any intent to

---

[1] Plaintiff acknowledges that under the Agreement, Illinois law applies to Plaintiff's claims. (*See* Compl. ¶ 19.)

4

honor a promise in the underlying contract." *Id.* at *3; *Connick*, 675 N.E.2d at 594-95 (holding that plaintiff stated a claim for violation of the ICFA by alleging that Suzuki misrepresented the extent of passenger protection to *Car & Driver* magazine and concealed information about safety risks); *Pappas*, 844 N.E.2d at 999-1000 (holding that plaintiff stated ICFA claim by alleging that Pella knew that its windows leaked water but failed to disclose these facts, which were independent of breach of warranty claim); *Perona*, 684 NE. 2d at 867 (reversing dismissal of ICFA claim insofar as claim was based on Audi's concealment of safety defects regarding the Audi 5000). By contrast, the *Widoff* court held that because "plaintiffs d[id] not allege a fraud related to the product itself" but, rather, alleged concealment of an intent not to honor a promise to pay reasonable medical expenses, this was merely a breach of contract claim and was insufficient to state a claim under the ICFA. *Id.* ("The crux of Plainiffs' Complaint is . . . that the Defendants promised to pay reasonable medical expenses and then failed to do so."); *see also Avery*, 835 N.E.2d at 844 (holding that purported nationwide class action ICFA claim could not be based on a mere contractual promise to restore vehicles to a "pre-loss condition" or to use parts of "like kind or quality," because the "deceptive act must involve something more than the promise to do something and a corresponding failure to do it"); *Shaw*, 461 F.3d at 901-02 (holding that plaintiff's allegation that Hyatt hotel failed to honor a $502 room rate offered on its Website was nothing more than an unfulfilled contractual promise rather than a consumer fraud claim, and motion to dismiss was properly granted); *Sklodowski v. Countrywide Home Loans, Inc.*, 832 N.E.2d 189, 196-97 (Ill. App. Ct. 2005) (rejecting consumer fraud act claim based on failure to "promptly" return escrow funds as promised in contract).

Here, the allegations in Plaintiff's breach of contract claim and the ICFA claim are virtually identical. In its breach of contract claim, Plaintiff alleges that Stericycle "breached its

5

agreements with Plaintiff and members of the Class by imposing an automated increase that bore no relation to costs Defendant incurred on the fees they paid for medical waste disposal services." According to Plaintiff, these purported automated increases were not provided for in the contracts of Plaintiff and members of the Class. (Compl. ¶ 88.) Similarly, Plaintiff's ICFA claim is pled as follows:

> 95. Defendant engaged in an unfair and deceptive act or practice by imposing automated price increases. Defendant knew that its practice was not authorized by its contracts with Plaintiff and the Class, but it nevertheless used various forms of pressure and trickery to force small-quantity customers to pay as much of it as it could.
>
> 96. Defendant concealed material[] facts from Plaintiff and members of the Class. Defendant's scheme included concealing that it used an automated price increase algorithm in its computer system to increase customers' fees, giving customers fabricated rationales for price increases, and offering discounts on APIs only to complaining customers and only if they threatened to cease using Defendants' services. Defendant's practice offended public policy, was immoral, unethical, oppressive, and unscrupulous, and caused substantial injury to consumers.

(Compl. ¶¶ 95-96.)

The crux of paragraphs 95 and 96 is that Stericycle allegedly failed to live up to the Agreement by charging customers automated price increases unrelated to cost escalation. Paragraph 96 refers to "fabricated rationales" for price increases, but Plaintiff not only fails to allege with specificity, it does not state what the rationales were. For example, the rationale may have been a cost increase pursuant to section 2(b) of the contract. As such, this would be a straightforward breach of contract case and nothing more.

The alleged ICFA violation is no more than an allegation that Stericycle breached the contract—or, at best, that Stericycle entered into the contract intending all along to breach it. This is insufficient to state a claim under the ICFA. The only "deception" alleged by Plaintiff is that Stericycle raised its prices in violation of its contract because the price changes were not

"related" to costs. In other words, Plaintiff alleges only that Stericycle violated the ICFA because it failed to tell its customers that its price increases were not related to its costs; that is, Stericycle failed to tell Plaintiff that it breached the contract.

Plaintiff further alleges that Stericycle engaged in a scheme to defraud consumers when Stericycle concealed that it "used an automated price increase algorithm in its computer system to increase customers' fees" in violation of the Agreement. (Compl. ¶ 96.) Illinois courts, however, have rejected identical arguments relating to the employment of automated computer software as the artifice by which a fraudulent scheme is carried out. These courts have held that the use of automated software is "only the alleged means employed by the Defendants to avoid keeping their promises." *Widoff*, 2012 WL 769727 at *4. For example, in *Greenberger*, the plaintiff alleged in a purported nationwide class action that insurance provider GEICO violated the ICFA by "falsely promising to restore its insureds' vehicles to their preloss condition and failing to disclose to policyholders that it would not keep this promise." 631 F.3d at 399. The plaintiff further alleged that the "instrument" of the fraud was GEICO's "damage-estimating software, which systematically omits or underestimates the cost of repairs." *Id.* The Seventh Circuit rejected this argument and held that it was merely a restatement of the breach of contract claim and that the "Consumer Fraud Act [was] not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy." *Id.* The plaintiff in *Widoff* similarly contended that defendant had violated the ICFA by concealing an intent not to honor a promise to pay a reasonable expense in a contract of insurance, and that defendant did not disclose that the determination of whether a charge was reasonable was "based upon a predetermined percentile of the flawed Ingenix database . . . and Decision Point software." *Widoff*, 2012 WL 769727 at *4. Similar to the holding in *Greenberger*, the *Widoff* court held

that these allegations were merely repetitive of the claims respecting the breach of contract claims, and dismissed the ICFA claim. *Id.*; *see also D.M. Robinson Chiropractic, S.C. v. Encompass Ins. Co. of Am.*, No. 10 C 8159, 2013 WL 1286696, at *13 (N.D. Ill. March 28, 2013) (citing *Greenberger* and *Widoff* and holding that allegations that insurance company violated ICFA because it used Ingenix and Decision Point systems to evaluate reasonableness of insurance claims did not state a claim for anything but breach of contract).

Here, despite Plaintiff's allegations that Stericycle employs a computer system that automatically increases prices to clients, Plaintiff has still not stated a claim for a violation of the ICFA. Plaintiff alleges, like the plaintiffs in the cases cited above, that automated computer software was used to make decisions under contractual provisions, and that the system's method of operation resulted in charging an API (or, as in the cases already cited, resulted in failure to pay insurance claims). Again, this is an allegation of breach of the contract but not commission of statutory fraud, because the breach of contract and ICFA claims still "rest on the same factual foundation" relating only to Stericycle's alleged non-compliance with the agreed-upon price escalation clause in the contract. *See Greenberger*, 631 F.3d at 399 ("[A] deceptive act or practice involves more than the mere fact that a defendant promised something and then failed to do it" because "[t]hat type of 'misrepresentation' occurs every time a defendant breaches a contract." (quotations and citations omitted)). Plaintiff's ICFA claim amounts to nothing more than that Stericycle concealed its intent not to live up to its contractual promises. These are the very type of assertions that Illinois courts have consistently rejected. *See Widoff*, 2012 WL 769727 at *4 (holding that ICFA claim was properly dismissed because "Plaintiffs d[id] not allege a fraud related to the product itself" and rather only alleged "Defendants' concealment of their intent not to honor promises to pay reasonable expenses"). When allegations are "nothing

8

more than restatements of the claimed breach of contract, albeit using the language of fraud," they are properly dismissed. *Greenberger*, 631 F.3d at 399. As a result, Plaintiff's consumer fraud claim against Stericycle should be dismissed as a matter of law.

      B.      <u>Plaintiff Insufficiently Alleges the Elements of an ICFA Claim.</u>

Under the ICFA, a plaintiff must allege: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiffs (5) proximately caused by the deception. *Pappas*, 844 N.E.2d at 998. Plaintiff's allegations are defective with respect to elements (1) and (5).

In connection with element (1), Plaintiff's Complaint does not allege with the particularity required under Rule 9(b) what the alleged deceptive act was. While there are passing references to pretextual explanations by Stericycle, there is not enough specificity to determine what these explanations were or whether they were contract defenses. As already described, the Agreement plainly states Stericycle may increase prices and fees to address cost escalations. (Compl. ¶ 26.) Plaintiff acknowledges that section 2(b) was contained in its Agreement with Stericycle. (*Id.* ¶¶ 26, 29.) And while Plaintiff alleges that it and other members of the class would not have signed the contract if it had known that Stericycle intended to breach it, (Compl. ¶ 97), this is not an allegation of deception, but rather breach of contract. In addition, any price changes are reflected in writing on customer invoices, as Plaintiff readily admits and explains in the Complaint. (Compl. ¶¶ 41-44, 60-65.) In essence, Plaintiff is complaining that the price increases are a breach of contract because they allegedly "have no relation" to cost increases. However, there is no alleged deception, other than the alleged breach

9

of contract,[2] as discussed *supra* Section I(a). Moreover, Plaintiff flatly alleges that Stericycle's price increases were unrelated to costs, and that Stericycle's representations that the increases related to costs were false. (Compl. ¶¶ 95, 96.) Plaintiff does not provide the required specificity detailing the nature of any supporting allegations explaining how Stericycle's representations are false. Plaintiff's allegations with respect to element (1) are clearly inadequate to satisfy the pleading standards of Rule 9(b). *See Greenberger*, 631 F.3d at 399.

In addition, the Complaint is defective with respect to element (5) (proximate causation) because it contains no allegations that Plaintiff relied on any alleged deception that proximately caused it alleged damages. Rather, the Complaint simply alleges Plaintiff entered into an Agreement with Stericycle for a flat monthly fee, that Stericycle allegedly began increasing its prices, and that after receiving the December 1, 2009 invoice, Plaintiff complained that the price increase "violated his Steri-Safe Service Agreement." (Compl. ¶¶ 60-62.) When a plaintiff seeks damages under the ICFA, it must allege and then prove that it relied on the misrepresentation and this reliance was the cause of its damages. *See DeBouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009) ("[T]he plaintiff must actually be deceived by a statement or omission that is made by the defendant. If a consumer [has not] relied on the statement . . . [he] cannot prove proximate cause.").

Here, however, Plaintiff openly states in its Complaint that it believed there was a breach of contract because it saw the amounts invoiced from Stericycle, recognized a supposed breach of contract, and then called Stericycle to complain. (*See id.*) This belies any reliance on a

---

[2] In paragraph 31 of the Complaint, Plaintiff alleges that Mr. Kogler of Stericycle testified falsely when he said that the system was "preset according to the customer's contract." (Comp. ¶ 31.) Again, the allegation concerns a dispute about the contract terms, and because Stericycle does not agree with Plaintiff's contract interpretation, it does not follow that Stericycle has made a deceptive statement.

misrepresentation proximately causing damages. For all of these additional reasons, the ICFA claim must be dismissed.

### C. Alternatively, Plaintiff's ICFA Claim Must Be Dismissed Because Non-Illinois Residents Cannot Sue Under the Statute.

Plaintiff's Complaint should be dismissed because the ICFA does not create a private right of action for fraudulent transactions occurring outside Illinois. *Gridley v. State Farm Mut. Auto. Inc. Co.*, 840 N.E. 2d 269, 274 (Ill. 2005). For a non-Illinois resident, a private cause of action under the ICFA is allowed only "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Phillips v. Bally Total Fitness Holding Corp.*, 865 N.E. 2d 310, 315 (Ill. App. Ct. 2007) (citing *Avery*, 835 N.E. 2d at 854). This determination requires an examination of the totality of a number of circumstances, including (1) the claimant's residence; (2) the defendant's place of business; (3) the location of the relevant item that is the subject of the disputed transaction; (4) the location of the claimant's contacts with the defendant; (5) where the contracts were executed; (6) the contract's choice of law provisions[3]; (7) where the allegedly deceptive statements were made; (8) where payments for services were sent; and (9) where complaints about the goods and services were directed. *Haught v. Motorola Mobility, Inc.*, No. 12 C 2515, 2012 WL 3643831 at *3 (N.D. Ill. 2012). The totality of these factors weighs against allowing Plaintiff to bring an ICFA claim.

Plaintiff concedes it is a non-Illinois resident and purports to bring a nationwide class action on behalf of other non-Illinois residents. Plaintiff does not, as required by law, allege that the transaction at issue occurred substantially and primarily in Illinois. Plaintiff has not alleged

---

[3] Illinois courts, however, have held that a choice-of-law provision in a relevant contract directing the application of Illinois law is only one factor in determining whether an ICFA claim is properly brought by a non-Illinois resident. *See Haught*, 2012 WL 3643831 at *5; *see also Int'l Profit Assocs, Inc. v. Linus Alarm Corp*, 971 N.E.2d 1183, 1191 (Ill. App. Ct. 2012).

that its meetings and conversations with Stericycle took place in Illinois. To the contrary, Plaintiff generally alleges that solicitations and contacts are often made locally to individual small clients through conversations with disposal drivers or customer service representatives. (Compl. ¶ 16.) At most, Plaintiff has alleged that the purported fraudulent scheme emanated from Illinois. However, allegations that a deceptive practice was devised in or disseminated from defendant's headquarters are insufficient as a matter of law to support an ICFA claim. *Phillips*, 865 N.E. 2d at 315. Therefore, where, as here, a complaint fails to allege that the conduct at issue occurred "primarily and substantially" in Illinois, the plaintiff has failed to state a claim under the ICFA upon which relief may be granted, and dismissal is appropriate.

### III. PLAINTIFF'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED BECAUSE THERE IS AN EXPRESS CONTRACT BETWEEN THE PARTIES.

Plaintiff has pled the existence of an express written contract with Stericycle. Plaintiff's unjust enrichment claim should be dismissed. "Because unjust enrichment is based on an implied contract, where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *People v. ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 180 (Ill. 1992); *DeJohn v. The TV Corp. Int'l*, 245 F. Supp. 2d 913, 919 (N.D. Ill. 2003) (parties had entered into an express contract, making implied contract claim inappropriate). The law precluding unjust enrichment when there is an express contract is well-established, and there is no legal or factual basis for unjust enrichment here. Accordingly, Plaintiff's claim for unjust enrichment must be dismissed as a matter of law.

### IV. PLAINTIFF'S COMMON-LAW FRAUD ALLEGATIONS ALSO FAIL AS A MATTER OF LAW AND SHOULD BE DISMISSED.

Plaintiff also fails to adequately plead a common-law fraud claim. The elements of common-law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4)

12

plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Connick*, 675 N.E.2d at 591. "A successful common law fraud complaint must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." *Id.*

In support of its common-law fraud claim, Plaintiff states in its Complaint:

> 107. Defendant made a false statement of material fact to Plaintiff and the class when its contracts stated the fee Defendant charged for medical waste disposal services. In truth, the fee was to be increased by APIs not disclosed to Plaintiff or the Class. Defendant knew that it would not charge the fee stated in its contracts, and instead would impose APIs on Plaintiff and the Class.
>
> 108. Defendant intended that Plaintiff and the Class would agree to use Defendant's services based on the fee expressly stated in its contracts. Defendant intended that its stated fee would induce Plaintiff and the Class to act. Plaintiff and members of the Class relied on the fee as stated in their contracts with Defendant and expected that they would pay that fee, subject to the two limited conditions in which Defendant could increase the fee. Instead, Defendant charged Plaintiff and the Class APIs, and the APIs damaged Plaintiff and the Class.
>
> 109. Defendant concealed that it did not intend to, and did not, charge Plaintiff and the Class the fee stated in their contracts with Defendant, and instead intended to, and did, charge Plaintiff and the Class APIs. Defendant concealed that it had a policy of charging APIs, and that the terms of Defendant's contracts falsely conveyed that price increases were the result of operational changes implemented to comply with changes in law or specific increases in costs. Defendant concealed that it used an automated price increase algorithm in its computer system to increase customers' fees. Defendant was under a duty to disclose these facts, and its failure to do so deceived Plaintiff and members of the class.

(Compl. ¶¶ 107-109.)

Regarding the first element requiring a false statement of material fact, as demonstrated by the quoted paragraphs, Plaintiff's Complaint does not allege with the required particularity under Rule 9(b) what the alleged deceptive act was. For example, there are no allegations regarding what the misrepresentations were, who made them, when they were made, where they

13

were made, and to whom they were made. As already described, the Agreement plainly states that Stericycle may increase prices and fees to address increased costs. (Compl. ¶ 26.) In addition, any price changes are reflected in writing on customer invoices as is readily acknowledged and extensively cited by Plaintiff. (Compl. ¶¶ 42-43, 60-65.) Once again, Plaintiff is complaining only that the price increases are unrelated to cost increases and, therefore, constitute a breach of contract. There is no alleged deception, only an alleged breach of contract, as discussed *supra* Section I(a). Plaintiff's allegations are clearly inadequate to satisfy the pleading standards of Rule 9(b). *Greenberger*, 631 F.3d at 399. Because there is no deceptive act, Plaintiff cannot satisfy the other common-law fraud elements of actual reliance on a fraudulent misrepresentation and actual damages resulting from the reliance. *Id.* at 401. Therefore, "[l]ike the [ICFA] claim, the common-law fraud count is just a reformulation of the contract claim," and should be dismissed. *Id.* at 401.

In addition, in paragraph 109 of the Complaint, Plaintiff alleges that Stericycle committed common-law fraud by concealing its intent not to charge the fee stated in the contract but rather employ automatic price increases. To state a claim for fraudulent concealment, however, "a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Connick*, 675 N.E.2d at 593. As explained by the Illinois Supreme Court in *Connick*:

> A duty to disclose a material fact may arise out of several situations. First, if plaintiff and defendant are in a fiduciary or confidential relationship, then defendant is under a duty to disclose all material facts. Second, a duty to disclose material facts may arise out of a situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff. This position of superiority may arise by reason of friendship, agency, or experience.

*Id.*; *see also Greenberger*, 631 F.3d at 401. In *Connick*, the court held that plaintiff had not

adequately pleaded a special relationship with the defendant, Suzuki, because it had merely alleged that plaintiff had purchased a Samurai from a Suzuki dealership, and that Suzuki manufactured and distributed the Samurai. 675 N.E.2d at 593. "Nowhere in the complaint did plaintiffs sufficiently allege that they were in a confidential or fiduciary relationship with Suzuki or that Suzuki was in a position of superiority over them," *id.*, and the fraudulent concealment claim was properly dismissed.

The pleadings in Plaintiff's complaint are similarly defective. Plaintiff flatly alleges that "Defendant was under a duty to disclose these facts [related to APIs]." (Compl. ¶ 109.) However, there is no further allegation of a fiduciary relationship between Stericycle and Plaintiff or any other class member or that Stericycle was in a position of superiority over Plaintiff. These facts do not exist, in any event. *See Ransom v. A.B. Dick Co.*, 682 N.E.2d 314, 322 (Ill. App. Ct. 1997) ("[O]rdinarily in a business transaction each party guards his own interests and no fiduciary duty exists."). Plaintiff's common-law fraud claim should be dismissed for all of these reasons.

## **CONCLUSION**

For all of the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's ICFA (count 2), unjust enrichment (count 3), and common-law fraud (count 4) claims.

DATED this 12th day of June, 2013.

Respectfully submitted,

/s/ Raymond J. Etcheverry

| | |
|---|---|
| Paul E. Chronis | Raymond J. Etcheverry *(admitted pro hac vice)* |
| Elinor L. Hart | Mark A. Glick *(admitted pro hac vice)* |
| Duane Morris LLP | Cory D. Sinclair *(admitted pro hac vice)* |
| 190 S. LaSalle Street, Suite 3700 | PARSONS BEHLE & LATIMER |
| Chicago, Illinois 60603 | 201 South Main Street, Suite 1800 |
| Telephone: (312) 499-6700 | Salt Lake City, UT 84111 |
| Email: PEChronis@duanemorris.com | Telephone: (801) 532-1234 |
| EHart@duanemorris.com | Facsimile: (801) 536-6111 |
| | E-mail: REtcheverry@parsonsbehle.com |
| | mglick@parsonsbehle.com |
| | csinclair@parsonsbehle.com |

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of June, 2013, I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF STERICYCLE INC.'S MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

>Elizabeth A. Fegan
>Hagens Berman Sobol Shapiro LLP
>1144 W. Lake St., Suite 400
>Oak Park, IL 60301-1043
>Email: beth@hbsslaw.com
>
>Thomas E. Ahlering
>Hagens Berman Sobol Shapiro LLP
>1144 W. Lake St., Suite 400
>Oak Park, IL 60301-1043
>Email: toma@hbsslaw.com
>
>Steve W. Berman
>Hagens Berman Sobol Shapiro LLP
>1918 8th Ave., Suite 3300
>Seattle, WA 98101
>Email: steve@hbsslaw.com
>
>Jeffrey Sprung
>Hagens Berman Sobol Shapiro LLP
>1918 8th Ave., Suite 3300
>Seattle, WA 98101
>Email: jeffs@hbsslaw.com

/s/ Raymond J. Etcheverry